331 So.2d 563 (1976)
Max H. DURHAM, Jr.
v.
The FIRST GUARANTY BANK OF HAMMOND et al.
No. 10678.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
Writ Refused July 2, 1976.
Herschel L. Abbott, Jr., New Orleans, for appellant.
Tom H. Matheny, Hammond, for appellees.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
Plaintiff-appellant, Max H. Durham, Jr., appeals a judgment in favor of defendant and plaintiff-in-reconvention, The First Guaranty Bank of Hammond, Louisiana, for $12,103, with interest at 10 percent on $17,000 from January 30, 1972, until paid, and for attorney's fees of 25 percent of principal and interest due, and for all costs.
*564 This litigation arose when plaintiff sued for a writ of mandamus directing the Clerk of Court and Ex-Officio Recorder of Mortgages, Parish of Tangipahoa, Louisiana, to erase from Book 234, Folio 21 of the public records a $20,000 collateral mortgage executed by the plaintiff in favor of the defendant bank and directing the defendant bank to return said mortgage document to the plaintiff. The bank reconvened against the plaintiff, praying for recognition of its rights under the mortgage and for judgment in its favor on a promissory note it contends is secured by said mortgage.
The bank, in brief and in oral argument, acknowledges that the only issue facing this court is the effect of the collateral mortgage and collateral mortgage note executed by plaintiff on May 3, 1972.
The bank contends that said collateral mortgage secures a $17,000 promissory note owed to it by the partnership composed of the plaintiff, Max H. Durham, Jr., and Sidney H. Lazard. The $17,000 note was executed on November 3, 1971, by Guy W. Smith under a power of attorney from Lazard.
The existence of said note is not questioned. However, the plaintiff contends that the collateral mortgage and note which he subsequently executed on May 3, 1972, does not secure said $17,000 note.
Prior to trial the parties entered into an agreement whereby the collateral mortgage was cancelled and the property subject thereto was sold and the proceeds escrowed awaiting a final determination of their respective rights.
Without recorded reasons, the trial judge found in favor of the bank and rendered judgment for the balance due on the note, $12,103. As previously noted, the bank contends that the only issue on appeal is whether the collateral mortgage note secures the $17,000 note. If so, the bank is entitled to the balance due on the note, and the judgment of the trial court must be affirmed. If, to the contrary, the $17,000 note is not secured by the collateral mortgage note, the plaintiff is entitled to the entire proceeds from the sale of the property.
The collateral mortgage executed by the plaintiff is in authentic form, payable on demand to any holder, and contains the following pertinent language:
"This is a collateral note secured by a collateral mortgage to secure future advances made by the holder or future holders. It may be pledged as collateral security for any hand note or notes, which shall govern the terms, time of payment, interest rate and all other conditions set forth therein. Said note may be issued and re-issued for collateral purposes, without confusion." (Defendant's Exhibit-4)
Thereafter, the description of the mortgaged property is set forth.
Contemporaneous with the above mortgage, plaintiff executed a $20,000 demand note in favor of the bank, bearing interest at the rate of 10 percent per annum, duly paraphed "`Ne Varietur' For identification with an Act of Collateral mortgage passed before me this 3rd day of May, 1972" by Henry A. Mentz, Jr., Notary Public.
It is undisputed that the $20,000 promissory note is secured by the collateral mortgage and that after signing the mortgage and note, the plaintiff pledged the note secured by the mortgage to the bank.
In conjunction with the above-described mortgage, the plaintiff, on November 9, 1972, executed a note in favor of the bank for $3,500, which contained the notation:
"This note is secured by the pledge and/or assignment of securities and collateral which has previously been deposited with said bank or as follows:

*565 $20,000 Collateral mortgage dated 5-3-72."
(Defendant's Exhibit-5)
Plaintiff repaid said loan and the $3,500 note was marked "Paid" on January 15, 1973.
The bank was certainly aware of the procedure to be followed when securing a debt by a collateral mortgage, as the manner in which the $3,500 note was connected to and secured by the collateral mortgage note conformed to the accepted practice. As evidenced by the language contained in the note itself, the "hand note," as the $3,500 note is commonly called, was secured by the pledge of the $20,000 mortgage note, which, in turn, was secured by the mortgage of the property specified therein. See "The Collateral Mortgage," Nathan and Marshall, 33 La.L.Rev. 497, at pp. 501-2.
The accepted method to connect the hand note to the security of the collateral mortgage is to designate on the face of the hand note that it is secured by the pledge of the mortgage note. See Slidell Building Supply, Inc. v. I. D. S. Mortgage Corporation, 273 So.2d 343 (La.App. 1st Cir. 1972); writ refused, 274 So.2d 708 (1973).
However, the $17,000 note sued upon in the instant case does not contain any such reference to the collateral mortgage and note. There is absolutely no connexity between it and the mortgage security.
We note also that the language of the mortgage itself sets forth that it is given "to secure future advances made by the holder or future holders." Since the mortgage was executed six months after the execution of the $17,000 note, the very language of the mortgage indicates that it was not given as security for the pre-existing $17,000 debt. It is true, however, as the bank argues, that a collateral mortgage can be given for a pre-existing debt; but if such was the case herein, the bank failed to show the connection between the note and the mortgage. It would have been a simple matter to make reference in the mortgage note to the fact that it was being pledged as security for the pre-existing $17,000 note but the bank failed to do so.
In fact, the bank's representative at trial, Randall Burris, acknowledged that while the bank indicated on its ledger that the plaintiff's $3,500 note was collateralized by the $20,000 mortgage of May 3, 1972, there was no collateralization listed for the $17,000 note (see bank's exhibits 4 and 5). Therefore, by its own admission, the bank acknowledged that the subject note was not secured by the plaintiff's collateral mortgage note.
The pledge of a collateral mortgage note to secure an indebtedness is a contract, LSA-C.C. Art. 3133. The pledge secures only that debt or debts contemplated in the contract between the pledgor and pledgee. See Smith v. Shippers' Oil Co., 120 La. 640, 45 So. 533 (1908); Teutonia National Bank of New Orleans v. H. Loeb & Co., 27 La.Ann. 110 (1875); Syndics of Yard & Blois v. Mechanics' and Traders' Bank, 8 La. 480 (1835).
In light of the foregoing authorities, we have searched in vain to find a contractual connection between the $17,000 indebtedness and the collateral mortgage note. Obviously, the bank was also painfully aware of this deficiency as it futilely attempted to draw an oral admission from the plaintiff that one of his purposes in executing the collateral mortgage was to secure the preexisting $17,000 indebtedness. However, the plaintiff steadfastly denied that such was the case, and furthermore contended that the instruments themselves were the best evidence that such was not the intentions of the parties.
Because of their very nature and function, security devices should be strictly construed. See Thrift Funds Canal, Inc. v. Foy, 242 So.2d 253 (La.App. 4th Cir. 1970), affirmed, 261 La. 573, 260 So.2d 628 (1972). Yet, even a liberal interpretation *566 of the instant collateral mortgage and accompanying note would not convince this court that the note sued upon was connected to and secured by said collateral mortgage.
For the above and foregoing reasons, the judgment of the trial court is hereby reversed and set aside; and it is ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Max H. Durham, Jr., recognizing his right to the escrowed funds herein, free from any security claim by the defendant, The First Guaranty Bank of Hammond, and further judgment dismissing the reconventional demand of said defendant. All costs are to be paid by defendant. The First Guaranty Bank of Hammond.
REVERSED AND RENDERED.